# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | )  Docket No. 09-30-GZS |
| EDWARD BROWN and ELAINE BROWN, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' REQUESTS
## FOR A NEW TRIAL AND ANCILLARY RELIEF

Each Defendant has filed a Motion for New Trial.  Defendant Elaine Brown's Motion for

New Trial and Ancillary Relief (Docket Item 176); Defendant Edward Brown's Motion for New

Trial Pursuant to Fed. R. Crim. P. 33 and for Intermediate Relief (Document Item 177). The

Government objects to granting either of the Defendants a new trial.  Government's Partial

Consolidated Objection to Motions for New Trial (Docket Item. 178); Government's

Consolidated Objection to Defendants' Motions for New Trial (Docket Item 181).   After

thoroughly considering the argumentation of the parties and the affidavits submitted therewith,

the Court will deny Defendants' motions.

## I.   DISCUSSION

"The remedy of a new trial is to be granted sparingly and only to avoid a miscarriage of

justice." United States v. Garcia-Alvarez, 541 F.3d 8 (1st Cir. 2008).  To the extent the Motions

rely in part on allegations of newly discovered evidence,

> [a] defendant who seeks a new trial on the basis of newly discovered evidence
> bears a weighty burden of establishing that: (1) the evidence was unknown or
> unavailable to the defendant at the time of trial; (2) failure to learn of
> the evidence was not due to lack of diligence by the defendant; (3) the evidence is
> material and not merely cumulative or impeaching; and (4) the emergence of the
> evidence will probably result in an acquittal upon retrial of the defendant.   A new
> trial motion must be denied if the defendant fails to meet any one of these factors.

> A showing of prejudice under the fourth prong of the test requires an 'actual probability that an acquittal would have resulted if the evidence had been available.

United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009) (quotations and citations omitted).  A slightly different standard is applied when a defendant seeks new trial on the basis of newly discovered evidence that he contends should have been produced under Brady.  "For such claims, the defendant must establish that: (1) the evidence at issue is material and favorable to the accused; (2) the evidence was suppressed by the prosecution; and (3) the defendant was prejudiced by the suppression in that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  Del-Valle, 566 F.3d at 40.

The issues raised by the Defendants are as follows: (1) an alleged Rule 16 violation by the Government for failure to disclose that it intended to offer threatening statements made by Defendant Edward Brown (Edward Brown Motion ¶¶ 15-19); (2) alleged errors in evidentiary rulings related to the Defendants' state of mind and the justification defense (Edward Brown Motion ¶¶ 20-32; Elaine Brown Motion at 2, 4, 5-6); (3) alleged jury instruction errors by the Court (Elaine Brown Motion at 2, 3-4); (4) alleged errors by the Court in denying the Rule 29 Motions (Elaine Brown Motion at 4); (5) an allegation that the government's refusal to immunize two potential defense witnesses abridged Elaine Brown's Sixth Amendment rights (Elaine Brown Motion at 5); and (6) allegations of newly discovered evidence (Edward Brown Motion ¶¶ 10-13, 33-36; Elaine Brown Motion at 6-8).  The Court will address each of the alleged errors in turn.

## A.  Alleged Rule 16 Violation

Defendant Edward Brown contends that the government violated Rule 16 when Chief Deputy Marshal Gary DiMartino testified about threats made by Edward Brown.  In relevant part, Rule 16 states:

> Rule 16. Discovery and Inspection
>
> (a) Government's Disclosure.
> > (1) Information Subject to Disclosure.
> > (A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.
> > (B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
> > (i) any relevant written or recorded statement by the defendant if:
> > > • the statement is within the government's possession, custody, or control; and
> > > • the attorney for the government knows--or through due diligence could know--that the statement exists;
> > (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
> > (iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

Fed. R. Crim. P 16(a).  At trial this issue was raised by the Defendants and discussed at side bar. The government proffered that Deputy DiMartino authored no reports and, therefore, there were necessarily no reports that contained any threats made by Mr. Brown.  Because there were no reports, Rule 16(a)(1)(B) does not require disclosure.  With respect to Rule 16(a)(1)(A), Deputy DiMartino testified that he and Mr. Brown had a series of telephonic discussions during the spring of 2007, which were designed by Deputy DiMartino to keep the lines of communication open and to persuade Mr. Brown to surrender.  The undisputed testimony at trial indicated that

the phone calls were conversational in tone and intended to facilitate a peaceful resolution of the situation.   It was clear from the testimony of Mr. DiMartino that his many telephone conversations with Mr. Brown, during one of which the statement at issue was made, were not interrogations nor were they the functional equivalent of interrogations.  Mr. Brown testified at trial but he did not dispute the nature of the telephone calls testified to by Deputy DiMartino. Because the conversation at issue was not an interrogation, the statement was not subject to Rule 16 disclosure prior to Deputy DiMartino's testimony.

### B.  Evidence of Defendants' State of Mind and the Justification Defense

Prior to trial, the Court asked the Defendants to file offers of proof on the justification defense.  <u>See</u> Edward Brown's Sealed Offer of Proof (Docket Item 143); Elaine Brown's Sealed Offer of Proof (Docket Item 145).   Based on the Defendants written proffers, the Court determined that the affirmative defense of justification was not available.   After hearing the Defendants evidentiary proffer at trial, the Court again ruled that the affirmative defense of justification was not available to the Defendants.  At that time, the Court advised counsel that based upon <u>United States v. Lahey</u>, 473 F.3d 401 (1st Cir. 2007), the Defendants failed to satisfy the evidentiary predicate for the justification defense.[1]  In connection with that ruling, the Court found that there was no other evidentiary basis to admit evidence relating to the state of mind of either Defendant.[2]   Throughout trial the Court repeatedly advised defense counsel that the ruling

---

[1] The four <u>Lahey</u> elements that must be shown to establish the justification defense are that the defendant was: (1) under an unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation in which he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative but to engage in that conduct; and (4) there was a direct causal relationship between his criminal conduct and the need to avoid the threatened harm.  Here, the Defendants could not satisfy any of the elements from the <u>Lahey</u> test.

[2] The Defendants argue that the Court erred by disallowing evidence of the defendants' state of mind.  This issue was addressed numerous times by the Court.  The self serving statements of the Defendants that they wanted to offer were clearly hearsay, being out of court statements offered for the truth of the matters asserted.  As such they were inadmissible. The case law in the First Circuit on the state of mind exception, including <u>United States v. Cianci</u>, 378 F.3d 71 (1st Cir. 2004) and <u>United States v. Alzanki</u>, 54 F.3d 994 (1st Cir. 1995), were relied upon by the Court in

was open for reconsideration if they had additional argumentation or precedent to present.  The Defendants did not then, and do not now in the instant motions, provide additional basis to support the admission of evidence relating to state of mind or the justification defense instruction.  Thus, for the reasons stated on the record at trial, the Defendants' argument regarding the admissibility of evidence on state of mind and the justification defense is without merit.

### C.  Alleged Errors in the Jury Instructions

Elaine Brown alleges the Court made other errors with respect to the jury instructions. First, while acknowledging that the First Circuit precedent does not support her argument, she alleges that the Court erred when it declined to give an instruction on reasonable doubt that articulates "the inherent right of jury nullification."  Elaine Brown's Motion for New Trial and Ancillary Relief at 4.  The Court gave the reasonable doubt instruction found in the First Circuit Criminal Pattern Instructions.  The Court did not err in refusing to give the jury nullification instruction.

Additionally, Elaine Brown argues that the Court erred by refusing to give a lesser included offense instruction as to the 924(c) charge.  As a result of comments made by counsel for Elaine Brown at the charge conference, however, the Court modified the Verdict Form to make it clear to the jury that if they found the defendant not guilty of the firearm portion of the 924(c) charge they could not consider the destructive device portion of the 924(c) charge.  That is, only if the jury found the defendant guilty of the firearm portion of the 924(c) charge could they then consider the destructive device portion of the 924(c) charge.  That modification did, in

---

sustaining the government's objections to the proffered hearsay statements.  Defense counsel provided no case law nor valid hearsay exception to warrant their admission and, therefore, the Court disallowed the testimony.

essence, provide the lesser included charge requested by the Defendant.  Therefore, the Court did give a lesser included offense charge on the applicable 924(c) count of the Indictment.

### D.  Alleged Errors in Admission of Evidence

The Defendants also allege that certain co-conspirator statements, including e-mails between Daniel Riley and Cirino Gonzalez that concerned the purchase of weapons and ammunition to be brought to the Brown residence during the course of the conspiracy, and statements made by Jason Gerhard also made during the course of the conspiracy to the effect that law enforcement officials trying to arrest Edward Brown were acting treasonously and that the penalty for treason was death, should have been excluded.  However, the Court conducted the required inquiry under United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977) and found that the statements were properly admitted, pursuant to Fed. R. Evid. 801(d)(2)(E), as co-conspirator statements made in furtherance of the conspiracy.

Elaine Brown alleges that evidence of Daniel Riley, Jason Gerhard, Cirino Gonzalez and Robert Wolffe were indicted was improperly admitted over defense counsel's objection.  The Government responds that it was the Court, not defense counsel, who called counsel to the side bar after that evidence was elicited.  Whether the issue was raised by the Court or defense counsel, the fact that the co-conspirators were charged in an indictment means nothing, as the jury was instructed prior to the start of trial and in the final jury instructions.   Moreover, the Court notes that there was never any testimony at trial indicating that the co-conspirators were ever convicted of a crime.

Elaine Brown also alleges that the Court erred by disallowing testimony offered by the defense to the effect that the government does not have the authority to collect income taxes, and to challenge the lawfulness of their prior tax convictions.  Prior to trial, the Government filed a

Motion in Limine, which sought to prevent the defendants from introducing evidence in order to attempt to establish that the Internal Revenue Service ("IRS") does not have legal authority to collect personal income taxes.  Government's Motion in Limine (Docket Item 123).  Whether the government has the authority to collect income taxes, which the law clearly establishes it does, or the lawfulness of the Defendants' prior convictions, would not make the existence of any fact of consequence more or less probable.  Thus, at the Final Pretrial Conference, the Court granted the Government's motion to exclude any evidence regarding the IRS's authority to collect income taxes and also ruled that the Defendants would not be permitted to introduce evidence challenging the lawfulness of their prior tax convictions.  See Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Elaine Brown alleges that the Court erred in having a portion of Edward Brown's testimony read back to the jury.  She now claims that the read back violated of Federal Rule of Evidence 106, commonly known as the rule of completeness.  At the time the jury requested the testimony, the Court gave counsel for the Defendants and counsel for the Government sufficient time to review the real time transcript of Mr. Brown's testimony before it was read to the jury.  Although defense counsel objected to reading back any portion of Mr. Brown's testimony, no request was made for additional portions of that testimony to be read back.   Consequently, any completeness objection was not presented and the Court did not have the opportunity to consider the inclusion of any additional testimony.  Moreover, to the extent the defendant objects to any rereading of testimony, the First Circuit has made clear that rereading of testimony to the jury rests in the sound discretion of the district court.  See, e.g. United States v. Brandon, 17 F.3d

409, 454-55 (1st Cir. 1994) ("[t]he decision to reread testimony rests entirely upon the trial court's sound discretion.").

Elaine Brown makes several foundation-based objections.  First she objects to the admission of government exhibit 4(f), the video tape of the interior of the house used during the testimony of Kenneth Erickson, an explosive expert with the Bureau of Alcohol Tobacco and Firearms ("ATF").   At trial the Defendants objected to the use of the video because the Government had not established that what the video fairly and accurately depicted what had been present in the home when the Browns were arrested.  The Government proffered that Special Operations Group ("SOG") Commander David Robertson would testify that within minutes of the Browns' arrest his men secured the house and that it remained secured until ATF agents arrived and took the video tape at issue – exhibit 4(f).  Subject to that later occurring testimony defense counsel agreed that the video could be played and used during Mr. Erickson's testimony. In fact David Robertson did so testify and he also authenticated and laid the proper foundation for government exhibit 4(g), a video tape taken by his men, while he was present, on the night the Browns were arrested.   That video tape, which was admitted and played for the jury, corroborated the location of the evidence seen in exhibit 4(f).  Accordingly, the record supports that there was a sufficient foundation for the admission of exhibit 4(f).

Elaine Brown alleges that it was error for the Court to allow the Government to show to the jury and admit in evidence the post-arrest video and still photographs depicting her in handcuffs.  She concedes that she did not object at the time either exhibit was being displayed to the jury or admitted in evidence.  In the absence of any objection, the Court did not err by permitting the Government to display and admit the exhibits.

Elaine Brown also alleges it was error, although she does not explain why in her Motion, to have allowed the admission of "military and guerilla warfare training manuals taken from the Brown home after their arrest, Government Exhibits 33a-2 through 33a-8." Elaine Brown's Motion at p. 6. The books were found at the Brown home and were relevant to the issue of whether the Browns were actively engaged in unlawful threats of violence against law enforcement. A proper foundation was laid for the admission of those books.

Elaine Brown also objects to the admission, as she did at trial, to all of the pipe bombs and all of the cans of gun powder that had been configured as explosive devices, alleging a lack of foundation. The testimony at trial established that those exhibits were what the government purported them to be, and that they had been recovered where the witnesses testified they were recovered in the Brown home or on the property.

Elaine Brown also alleges, without further explanation, that it was error for the Court to have allowed Deputy United States Marshal Edward Recor to testify about seeing Edward Brown shouldering a weapon consistent with a 50 caliber rifle. During Deputy Recor's testimony a 50 caliber rifle was shown to him and displayed to the jury. Deputy Recor testified that the 50 caliber was consistent with the type of rifle he had seen Edward Brown hold and point in the direction of the driveway, on the morning of June 7, 2007, within minutes of Daniel Riley having been tazered. The Government asserts that the rifle was later admitted as a full exhibit through another witness, ATF Agent Ernie Yerrington. The 50 caliber rifle was recovered at the Brown residence. There was nothing improper with Deputy Recor identifying the distinctive appearing firearm that he witnessed Mr. Brown holding.

### E.  Alleged Error in Denying Rule 29 Motions

Elaine Brown alleges that the Court erred in denying her Motions for Judgment of Acquittal.  See Fed. R. Crim. P. 29.  Elaine Brown's Motions for Judgment of Acquittal were denied for the reasons stated on the record at trial.  Nothing has changed with respect to those motions, thus, for the reasons stated on the record at trial, the Defendants' Rule 29 motions are without merit.

### F.  Government's Failure to Provide Immunity for Defense Witnesses' Testimony

Elaine Brown alleges that the government's refusal to immunize two potential defense witnesses abridged her Sixth Amendment rights to present all favorable proofs.  At no time during the trial did the Defendants assert that the government was acting in bad faith or that the Defendants' Constitutional Rights were being violated by the Government's refusal to immunize the prospective witnesses.  That claim arises here for the first time.

At trial, when the Defendants indicated that they would call Scott and Catherine Dion as witnesses, the Government advised the Defendants that the Dions were targets of an ongoing criminal tax investigation and that the Dions were aware of the investigation.  The Government further indicated to the Court that any grant of immunity would likely create significant issues for that investigation.  In United States v. Angiulo, 897 F.2d 1169 (1st Cir. 1990), the First Circuit critically reviewed the law as it relates to the two emerging theories related to compelling immunity, the effective defense theory (assuming theory is valid) and the prosecutorial misconduct theory.   Id. at 1190-93.  Although claiming error of Constitutional dimension, the Defendant has failed to articulate any facts sufficient to warrant inquiry into whether either theory might warrant the Court to consider ordering immunity, or to cause the Government to reconsider its position.

10

### G.  New Evidence

The Defendants indicate that on the afternoon that the jury verdicts were returned, they spoke by telephone to an individual who identified himself as "David Quinn."  Mr. Quinn told defense counsel that "[t]he confidential informant who befriended the Browns and then orchestrated their arrest on October 4, 2007 was an employee of the Forseti Group."   Elaine Brown's Motion at 7.   "Mr. Quinn reported that he believes that the testimony provided by Government witnesses pertaining to the plan and the eventual arrest of the Brown's is inaccurate. He reports that contrary to the testimony of Deputy Marshal William S. Robertson it was actually 'Dutch' [the confidential informant] who disarmed and seized Ed Brown.  Mr. Quinn also indicated that, as part of the planning for the apprehension of the Browns, psychological profiling consultants had determined that Ed Brown was mentally ill. Mr. Quinn also reported that the Forseti Group was being paid for its services by the United States Marshals Service." Edward Brown's Motion at 4.  Mr. Quinn finally stated that "[t]he [Forseti Group] employee was present at the Brown home prior to and during their arrest.  Based on his observations, he drew potentially exculpatory conclusions about Elaine Brown's interactions with her husband."  Elaine Brown's Motion at 7.  At no point in time prior to trial or during trial was the defense made aware of any involvement of the Forseti Group.  Edward Brown asserts that because this potentially exculpatory information was not provided to him he could not pursue: (1) the presentation of an insanity defense, (2) psychological information to further inform the jury with regard to whether Edward Brown acted with mens rea, (3) a <u>Roviaro</u> motion, and (4) impeachment of Deputy William S. Robertson regarding the arrest of Edward Brown.    Edward Brown's Motion at 12.   The Defendants allege in their Motions that they are entitled to a new trial based upon this discovery of this new evidence or, alternatively, discovery regarding

contracts, reports, invoices, e-mails or other writings pertaining related to the involvement of the Forseti Group in the investigation and arrest of the Defendants or the relationship between the Forseti Group and the Marshals Service.

On two subsequent occasions, Attorney Iacopino attempted to contact Mr. Quinn by telephone. Sealed Declaration of Michael Iacopino Regarding the Defendant's Pending Motion for a New Trial at 1 (Docket Item 188). On each occasion, a voice mail message identified the phone number as belonging to a school district. Id. at 2. On August 10, 2009, Attorney Iacopino again called the phone number he had been given by David Quinn and left a message. Id. Shortly after leaving the message, Attorney Iacopino received a call from a person who identified himself as the confidential informant. Id. The confidential informant advised Attorney Iacopino that David Quinn was a relative of his and that David Quinn had not provided "completely accurate information." Id. The confidential informant further indicated that he was willing to answer any questions but only if the prosecutor and his lawyer were on the call. Id. Attorney Iacopino contacted the confidential informant again by telephone, and at that time a conference call was scheduled for noon on August 25, 2009. Id. at 2-3.

Attorney Iacopino notified the Court at the presentence conference that the conference call scheduled for August 25, 2009, with the confidential informant did not take place because the confidential informant did not join the call at the appointed time. Attorney Iacopino also stated that he received a voice message from the individual he believed to be the confidential informant apologizing for not joining the scheduled call and indicating that he would get back to Attorney Iacopino when he was back in town. Thereafter, Attorney Iacopino indicated that he contemplated further filings on the matter, but to date there have been no filings made on behalf of either Defendant and counsel has not requested additional time to file.

12

Given the unusual nature of the post-trial contacts by the individual I will refer to as David Quinn, the Court asked the Government to provide detailed, clarifying information regarding the United States Marshals Service's relationship with the confidential informant, whether the confidential informant was employed by, or working with, any entity at the time he was working on the Brown case, the total amount of money paid to the informant, whether the informant had contact with the Forseti Group or any individual affiliated with the Forseti Group, in connection with the Brown case, and any potential Brady or Giglio information that the confidential informant may have knowledge of in the Brown case.  See Sealed Order on Request for Information (Docket Item 189).  The Government has filed four affidavits of Marshals Service employees who were involved with either the Brown case or the confidential informant. The Marshals Service appears to have conducted a diligent inquiry of all individuals within the Marshals Service who would have had access to the information referenced in the Defendants' Motions.

In one affidavit, a Marshals Service employee recounts an interview he conducted with the confidential informant on August 18, 2009, which explains how the David Quinn came to have some knowledge of the confidential informant's role in the case.  In fact, the affidavit clarifies the inaccurate information relayed to defense counsel and plausibly explains how David Quinn may have come into possession of the mistaken information he communicated to counsel for the Defendants.

The in camera affidavits from United States Marshals Service employees do not bear fruit on any of the issues raised by the Defendants in their Motions.   None of the information provided by the confidential informant contradicts in any material manner the testimony of the government's witnesses at trial.   The confidential informant has no knowledge of any

psychological profiling or testing conducted on Edward Brown.  In addition, there is no indication by the confidential informant that Elaine Brown's behavior was being controlled by Edward Brown or other potentially exculpatory information about the relationship between the Defendants that was not known by Elaine Brown.  The affidavits put to rest the issue of the Forseti Group and any suspicions that the confidential informant was an employee of the Forseti Group or any other entity at the time he worked on the Brown case.  Neither the information offered by David Quinn or the affidavits supplied by the Government in response to the Courts request provide a basis upon which to impeach Deputy William S. Robertson's trial testimony.  It is also clear from the totality of the information provided by the Government that it was not then, and is not now, in possession of any exculpatory evidence under Brady or Giglio.

Requests for information about the identity of a confidential informant and the struggle over entitlement to the privilege typically are fought out in motion practice and other pretrial proceedings.  E.g., United States v. Robinson, 144 F.3d 104, 105-06 (1st Cir. 1998); United States v. Bibbey, 735 F.2d 619, 621 (1st Cir.1984).  In recognition of the seminal case on a confidential informant's privilege, pretrial evidentiary hearings devoted to this issue is known as a "Roviaro hearings."   The Defendants have neither asked for the Government to disclose the identity of the confidential informant nor made a timely request for a Roviaro hearing.  Although the Defendants have indicated to the Court that they have attempted to interview the confidential informant and he was unavailable at the scheduled time, they have not asked the Court for any assistance to procure further communication with the confidential informant or asked for additional time to make that contact.

The Court has conducted a thorough review of the documentation presented by the Government in response to the post-trial phone calls involving David Quinn, the confidential

informant and the issues raised by the Defendants in their Motions with respect to the calls.  The Defendants have not established the existence of any new evidence that is material to any issue at trial.  <u>Del-Valle</u>, 566 F.3d at 38.  Thus, there is no basis to grant the Defendants a new trial.

## II.  CONCLUSION

The Court finds that none of the alleged errors, either alone or in combination, justifies the granting a new trial pursuant to Rule 33.  Accordingly, the Court **ORDERS** that Defendant Elaine Brown's Motion for New Trial and Ancillary Relief (Docket Item 176) and Defendant Edward Brown's Motion for New Trial Pursuant to Fed. R. Crim. P. 33 and for Intermediate Relief (Document Item 177), be and they are hereby, **DENIED**.

/s/George Z. Singal_____
United States District Judge

Dated this 24th day of September, 2009.