UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                                                                          No. 09-cr-30-02-GZS

ELAINE BROWN

### MOTION ON RESENTENCING

Now comes the defendant, Elaine Brown, through her counsel, Jeffrey S. Levin, Assistant Federal Defender, filing this motion on resentencing, and respectfully requesting that the Court vary below the advisory sentencing guidelines and resentence her to time served, with three years of supervised release to follow. The sentence requested is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).[1]

Elaine Brown will turn 79 years old in February 2020. Incarcerated since her arrest on October 4, 2007, by the time of resentencing she will have served, on this and the related tax evasion charges, three days shy of 148 months (12 years, 4 months).[2] A cancer survivor, Elaine currently suffers from chronic obstructive pulmonary disease (COPD), osteoarthritis, among other age-related ailments.[3]

---

[1] Not only are the guidelines merely advisory, they are "also not to be presumed reasonable." *Nelson v. United States*, 550 U.S. 350, 352 (2009). In imposing an appropriate sentence, this Court should make an "individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 49-50 (2007).. The Court's final determination must meet "§ 3553(a)'s overarching instruction to 'impose sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in [§] 3553(a)(2)," namely, retribution, deterrence, incapacitation, and rehabilitation. *Kimbrough v. United States*, 552 U.S. 85, 109-111 (2007).

[2] On information and belief, Elaine has earned all her good time under 18 U.S.C. § 3624 save for 14 days. Considering good time earned, Elaine has likely served approximately 174 months total - 111 months of her sentence in this case, in addition to 63 months on the previous tax evasion charges (111.11 months + 63 months = 174.11 months x 85% = 147.99 months).

[3] Elaine's current additional life expectancy, at 78 years and 11 months, is 10.7 years. *See* https://www.ssa.gov/cgi-bin/longevity.cgi (last accessed January 16, 2020).

Elaine has spent her time in custody working as a library clerk, volunteering, and taking many classes and programs, mainly in the religious services department. She has been described as a model inmate. She is most proud of having graduated in 2018 from the Life Connections Program, an 18-month, residential, multi-faith-based program designed to provide a positive environment for spiritual growth and behavioral change.

Elaine takes full responsibility for her offenses of conviction. She is ashamed and embarrassed of what she has done, and has tried in her way to make amends. She deeply regrets that, after a lifetime of professionalism, honesty, and hard work, she chose to follow her husband down a rabbit hole of extremism, disobedience, and, ultimately, criminality. Elaine is now in the process of obtaining a divorce, having concluded over time that her loyalty to her husband was badly misplaced. Elaine hopes that the Court will see that she has changed, and allow her to spend her remaining years in the community, with her brother and his wife and with her two adult children, both of whom are loving and supportive.

As grounds for her motion, Elaine states as follows:

**I.      Introduction**

On July 9, 2009, a jury convicted Elaine Brown on Counts 1, 2, 4, 6, 8 and 11 of an 11-count Indictment which charged her with the following offenses: Count 1: Conspiracy to Prevent Officers of the United States from Discharging their Duties, in violation of 18 U.S.C. § 372; Count 2: Conspiracy to Commit Offenses Against the United States, in violation of 18 U.S.C. §§ 371, 111(a)(1), and (b); Count 4: Carrying and Possessing a Destructive Device in Connection with a Crime of Violence, in violation of 18 U.S.C. § 924(c); Count 6: Felon in Possession, in violation of 18 U.S.C. § 922(g)(1); Count 8: Obstruction of Justice, in violation of 18 U.S.C. § 1503; and, Count 11: Failure to Appear for Sentencing, in violation of 18 U.S.C. § 3146.

The presentence investigation report determined that the total offense level was 31 and the criminal history was III, resulting in a guideline sentencing range of 135 to 168 months in the Bureau of Prisons (BOP). In addition, Count 4 carried a minimum mandatory consecutive sentence of 360 months.

On October 2, 2009, this Court sentenced Elaine to serve 48 months on Counts 1, 2, 6 and 8; 12 months on Count 11, consecutive to Counts 1, 2, 6 and 8; and 360 months on Count 4, consecutive to Counts 1, 2, 6, 8 and 11; for an aggregate term of 420 months in the BOP. The Court also imposed a three-year term of supervised release. The Court imposed the 420-month sentence to run consecutive to Elaine's previously imposed 63-month sentence in the related tax evasion prosecution, Docket No. 06-CR-71-SM.[4]

On September 25, 2019, the U.S. Court of Appeals for the First Circuit granted Elaine's successive 28 U.S.C. § 2255 motion to pursue a challenge to her 18 U.S.C. § 924(c) conviction. On October 21, 2019, the government filed its response to Elaine's successive § 2255 motion, averring that Elaine was correct that after *United States v. Davis*, 139 S. Ct. 2319 (2019), the § 924(c) conviction was invalid as lacking a qualifying predicate crime of violence to sustain the conviction. The government conceded that the Court should vacate the § 924(c) conviction and hold a resentencing on the remaining convictions. On December 5, 2019, the Court granted Elaine's successive 28 U.S.C. § 2255 motion without objection, vacating the § 924(c) conviction at Count 4 and ordering that the case be scheduled for resentencing on the remaining counts.

---

[4] Of note, the Court originally imposed a sentence below the advisory guideline range, on the defense's motion to which the government objected. *See* Doc. 215, *United States v. Elaine Brown*, No. 09-cr-30-02-GZS in the United States District Court for the District of New Hampshire. Defense counsel based his motion for variance on the circumstances of the offense and Elaine's personal history.

3

*Elaine Brown v. United States of America*, Docket No. 16-cv-277-GZS in the United States District Court for the District of New Hampshire.

The vacating of Count 4 limits Elaine's sentencing exposure to a total of 36 years and eliminates the minimum mandatory sentence of 30 years in effect at the original sentencing hearing. Elaine's new total offense level of 37, combined with a criminal history of III (based on 6 criminal history points: 3 points for the prior tax evasion conviction, 2 points for committing the offense while under a criminal justice sentence for the tax evasion case, and 1 point for committing the offense while under escape status for the tax evasion conviction), yields an advisory guideline sentencing range of 262 to 327 months in the Bureau of Prisons.

## II.   Nature and Circumstances of Offense

In January 2007, a *petit* jury returned verdicts finding Elaine and Edward Brown guilty of a number of tax-related offenses and white-collar offenses they committed between 1996 and 2006. The Browns defended themselves during trial by asserting their belief that there was no law requiring them to pay personal income taxes to the federal government. Prior to the verdict, but after several days of trial, Edward, who was released on bail, did not return to court, and secluded himself in the home he and Elaine owned in Plainfield, New Hampshire, at which point a warrant was issued for his arrest. Elaine attended each day of the trial, and after the jury returned its verdicts, was released on bail supervision with conditions, including a condition that she reside with her son in Massachusetts under home confinement, with electronic monitoring. A warrant was later issued for Elaine's arrest when she violated release conditions by removing her electronic monitoring bracelet and returning to the couple's home in Plainfield. In April 2007, both Edward and Elaine were sentenced, in absentia, to 63 months in prison.

The Browns were arrested on the instant charges in October 2007. While they were fugitives, they remained within the boundaries of the property on which their home is located. They also made a number of public statements regarding their intention to forcibly resist any effort to arrest them. They allowed a number of people who believe that the payment of personal income taxes is voluntary to enter and remain in their home for varying periods of time.

Throughout 2007 and up until the Browns' arrest in October 2007, these other people (the Browns' co-conspirators) performed a number of acts with and for the Browns to prevent the Browns from being arrested. Most significantly, they delivered a number of firearms and ammunition to the Browns. Like the Browns, their co-conspirators publicly stated their intention to use force to protect the Browns from being arrested, and asked other people to do the same. Some of the co-conspirators, including Jason Gerhard and Daniel Riley, helped to assemble and position explosive devices, spring guns and pipe bombs on the Browns' property.[5]

No person suffered any injury as a result of any of the actions of the Browns or their co-conspirators. At no time during the 8 months in 2007 did Elaine, or anyone else, fire a shot in anger at anybody. The words and actions of the Browns and their co-conspirators, while illegal, were intended as expressions of self-defense. At no time did Elaine, Edward, or their co-conspirators initiate or threaten to initiate aggressive force against anyone. There was no evidence at trial that Elaine had anything to do with explosives.

---

[5] There is no evidence that Elaine assembled or positioned any of the explosive devices, spring guns, and pipe bombs. As reflected in the PSR, in their proffers or statements to law enforcement no co-conspirator said that Elaine so involved. Edward Brown testified at trial that Elaine had nothing to do with the various destructive devices, and there was no trial evidence to the contrary.

The penalty assessment in this case was eventually written off.[6] The Brown's home in Plainfield and dental office building in Lebanon were both sold at auction to satisfy the forfeiture order in the related tax evasion case.

### III.     History and Characteristics of the Defendant

Up until the events at issue in this case, and the related tax prosecution, Elaine Brown led a peaceful and productive life. She had a long, successful 30-year career as a dentist, and owned her own business. She raised two children, largely on her own, both of whom grew up to be successful, hardworking people in their own rights. She had a completely clean criminal record.

Elaine Brown (nee Bernier) was born in Central Falls, Rhode Island, and raised in Pawtucket. Her father was a refrigeration mechanic and mother was a mill worker, people of modest income and means. Both were devout Catholics. Elaine had a solid, New England upbringing; she attended church regularly and worked hard in school. In raising her and her brother George,[7] Elaine's father stressed honesty and integrity. To her father, she says, "your word was everything."

Elaine attended an all-girls parochial school, and sang in the church choir into her 20s. She put herself through school with college loans, graduating from Northeastern University in Boston in 1967 with a degree in dental hygiene. Elaine worked as a dental hygienist for several years before enrolling in Tufts University School of Dental Medicine. In 1976, Elaine obtained

---

[6] In the related tax evasion case, $755 of the $1700 penalty assessment was collected; the remaining $945 was written off.

[7] George Bernier is a military veteran and 25-year veteran officer of the Los Angeles Police Department who has also worked for the city of Indianapolis, Indiana. He and his wife Barbara Bernier, a retired Indianapolis police lieutenant who specialized in narcotics investigations, currently reside in Indianapolis.

her Doctor of Dental Medicine (D.M.D.) degree. Elaine later developed an interest in holistic medicine and natural healing, and in 2000 she obtained her Master Herbalist Diploma from the School of Natural Healing, of Springvale, Utah.

Elaine worked as a dentist for 30 years, practicing first in the Boston area before opening Half Hollow Dentistry Center in Lebanon, New Hampshire, in 1993. The only dental provider in New Hampshire that practiced holistic methods, Elaine was also among the few dentists in the state that regularly saw Medicaid patients. She employed six individuals in her dental office. Elaine also maintained and operated an herbal store at her professional building where she counseled individuals on herbal supplements and treatments and sold various supplements to individuals.

Elaine has been married twice. She married George Hatch in Pawtucket, Rhode Island, in 1966. George worked as a police officer in Boston in the 1960s and early 1970s before moving to the Federal Emergency Management Agency (FEMA).[8] Two children were born to this union; Elaine's son David Bernier-Hatch will be 51 years old this April, and her daughter Bethany Hatch is 49. David graduated from Boston Architectural College in 2005 with degrees in both Interior Design and Architecture, and has worked as an architect for 22 years.[9] Bethany has a Bachelor of Science degree in Sociology; she has worked as an account executive for various health care companies, including Aetna and Partners HealthCare, for 25 years. Neither David nor Bethany have children of their own.

Elaine was diagnosed with breast cancer in 1981 and underwent a mastectomy. That year her marriage to George Hatch ended. For several years thereafter, Elaine was a single mother to

---

[8] George Hatch retired from FEMA in 2005.

[9] David also taught design at the Art Institute of Boston for 9 years until the school location closed.

David and Bethany, who were both just shy of becoming teenagers. This was a busy, stressful time in Elaine's life: as she recovered from cancer and her recent divorce, and got used to parenting on her own, she was also opening her first independent dental practice.

In 1985, Elaine met Edward Brown, after hiring him to exterminate pests in some rental units she owned in Revere and Lynn, Massachusetts. After dating for several months, Edward moved in with Elaine and her children. Both David and Bethany describe Edward as a "macho," domineering narcissist who was openly cruel to them. Elaine has come to realize that Edward drove a wedge between herself and her children and that she was too weak to stand up to him.

Edward worked as an exterminator for several years when he and Elaine were first together, but his business faltered when he refused to obtain an exterminator's license and was unable to procure public housing contracts as a result. Edward had always been prone to conspiracy theories and often carried on in public about the Illuminati and the Jesuits, espousing his anti-tax and anti-government beliefs. Elaine tolerated Edward but her children distanced themselves, and many of her friends disappeared, isolating her within the relationship.

In 1989, Edward and Elaine moved to New Hampshire, and the following year they married. Shortly after they moved to New Hampshire, Elaine started her dental practice in Lebanon, while Edward stopped working entirely, instead relying on Elaine to support them both. Edward delved deeper into his conspiracy theories and started associating with like-minded individuals in the so-called "militia movement." Conversely, Elaine worked all day at the clinic, running her business, then came home at night and cooked meals and cleaned house for herself and Edward.

Over time, Edward was influenced by books, videos, and other media relating to the tax resistance movement. He in turn exposed Elaine to these ideas. The couple became convinced

8

that there was no legal authority requiring them to pay federal income tax. They stopped filing returns in 1996 and in 2006 they were charged with conspiracy, tax evasion, money laundering, and other related crimes here in the District of New Hampshire. They represented themselves at the trial, which took place over 5 days in January 2007. At one point, mid-trial, Edward stopped coming to court, and an arrest warrant issued. Elaine was absent for a day, but then appeared on the next scheduled day and the arrest warrant for her was rescinded. The Federal Defender Office was appointed to represent Elaine. Edward (in absentia) and Elaine were both convicted. Present counsel assisted Elaine with the forfeiture portion of her trial, and successfully moved for bail pending sentencing. After the conviction, Elaine was permitted to remain on bail, with electronic monitoring; she was ordered to live with her son in Massachusetts and not to return to Plainfield.

While living with her son David in Worcester, Elaine experienced horrible anxiety attacks. She went to a doctor and was prescribed an anti-anxiety medication. While staying with David, she had problems sleeping and that she cried constantly. Edward urged her to defy the Court's order and return to their home in Plainfield. He lambasted her for acceding to the Court's orders and called her a "coward," which especially affected her. Ultimately, against her better judgment, she cut off the electronic monitoring device and returned to Plainfield, and Edward. Over the next 8 months the underlying events of this case ensued, until Edward and Elaine were both arrested in October 2007. They have both been in federal custody since then.

Prior to her 2006 arrest in the tax case, at age 65, Elaine had never been arrested or prosecuted for any crime. She has no issues with alcohol use or illicit drug use, and no

significant mental health issues. She does have physical health issues that require attention, specifically COPD, osteoarthritis, and pain in her hips and legs.[10]

### IV. Post-Offense Rehabilitation[11]

For over a decade, Elaine has been serving her aggregated sentences in the Bureau of Prisons. She has used this time productively, working, volunteering, and engaging in various programs and activities. Attached to this motion as Exhibit A is a three-page list of certificates she has earned while in the Bureau of Prisons; attached as Exhibit B are photocopies of the actual certificates she has earned. *See Exhibits A and B, attached*.

A review of these certificates demonstrates that in addition to the many classes and seminars she has completed on diverse subjects, Elaine has also served the community while incarcerated. She worked in the Education Department at FCI Aliceville (AL),[12] for example,

---

[10] While Elaine used to walk regularly for her health in prison, she has been unable to maintain this exercise due to this pain. Her prison doctor offered to order a wheelchair for her, but she decline, preferring to remain as mobile as possible.

[11] At resentencing, a district court may consider evidence of post-sentencing rehabilitation, and such evidence may support a downward variance from the advisory guideline range. *Pepper v. United States*, 131 S. Ct. 1229 (2011) (post-sentencing rehabilitation evidence may be highly relevant to several section 3553(a) factors, and may provide the most up-to-date picture of the defendant's "history and characteristics" and the likelihood of engaging in future criminal conduct). Post-offense rehabilitation can also provide the basis for a downward variance. *Gall v. United States*, 552 U.S. 38 (2007). U.S.S.G. § 5K2.19 had previously provided that post-sentencing rehabilitative efforts were not a basis for downward departure, but the section was deleted effective November 1, 2012 in light of *Pepper*. *Amendment 768, U.S. Sentencing Guidelines*.

[12] Elaine received excellent reviews for her work as a library clerk. In September 2014 her supervisor noted,

> "She is very polite and helpful to staff and other inmates. Mrs. Brown is always willing to change shifts, or cover for someone that may have class, visits, church, or any other situations that may cause them to miss their time of work. Mrs. Brown is very dependable when it comes to being at work. The only times she has missed work was when she sustained an injury to her hip. Mrs. Brown never complains about having to be at work or about the work she must complete. She is an asset to the education department.

and volunteered well as in the community crochet program at FMC Carswell (TX), making items for those less fortunate in the community. She also shared her expertise in dental matters by speaking about dental health during the Release Preparation Program, Staying Healthy class at FCI Aliceville (AL). *Id.*

Elaine's proudest achievement while incarcerated is her completion of the Life Connections Program (LCP) at FMC Carswell (TX), a residential multi-faith restorative justice program designed to foster moral, ethical, and spiritual growth. Elaine asked to be transferred to FMC Carswell in order to participate in this program, and she successfully completed the program on October 18, 2018.[13] According to the Bureau of Prisons website, LCP

> is a multi-faith residential reentry program that is available at five sites across the country at low, medium, and high security levels. It is an intensive, multi-phase program which instills values and character through a curriculum of personal, social and moral development. The LCP program utilizes various faith communities nationwide who serve as support group facilitators or mentors at program sites and release destinations to enhance community reintegration.

*See https://www.bop.gov/inmates/custody_and_care/religious_programs.jsp (last accessed January 16, 2020).* LCP is a residential program, with participants living together in a separate housing unit. Each cohort in LCP is comprised of 36 participants, and the program lasts 18 months. The curriculum involves five days of regularly scheduled afternoon and evening programming, as well as weekend activities, and participants have institution work assignments for up to four hours a day during unscheduled program hours. "Participants must complete 500 hours of community service, participate in Victim Impact Programs, complete 150 hours of addiction programming, provide financial and emotional support to their family through weekly

---

*Document 285-3, p. 3*. The same document describes Elaine as a "model inmate." *Id*.

[13] At graduation, Elaine was recognized as Most Consistent by the LCP program managers.

11

correspondence, maintain a regular journal, and establish re-entry goals and action steps."
*https://www.justice.gov/archive/fbci/progmenu_programs.html (last accessed January 16, 2020).*
Bureau of Prisons Operation Memorandum 002-2012 (5325) describing the program and its requirements is attached as Exhibit C. *See Exhibit C.*

As Elaine will inform the Court during her allocation, she learned about personal boundaries in the program, and came to better understand what she had already realized,[14] that her boundless loyalty to her husband had been misplaced. She also came to better understand that her crime had real victims: the U.S. Marshals, her family members, her neighbors, and her community.

Through word and deed, Elaine has demonstrated remorse for her actions. While serving her sentence during the past 12 years, she has also been on a faith journey. She understands that she and Edward were wrong to have disobeyed the Court, to have possessed weapons, and to have conspired with other to prevent the U.S. Marshals from effecting their arrests. She understands that she was wrong to have put her loyalty to Edward above her obligations as a citizen. She describes her actions in doing so as "misplaced loyalty." One lesson Elaine derived from her biblical studies that impacted her is that contained in Romans 13:1-2, words attributed to Paul the Apostle in which Paul exhorts his readers to honor and obey secular authorities.[15]

---

[14] Elaine sent letters of apology to the Court and to the local Plainfield (NH) newspaper in 2014. One such letter, addressed to the editor of *Plain Facts: News and Information for the People of Plainfield Township*, is attached as Exhibit D. *See Exhibit D*. In the letter, Elaine apologizes for her actions, asks for her neighbors' and townspeople's forgiveness, and states, One cannot do the wrong thing for the right reason; that is not God's way, nor the way of our constitutional republic." *Id.*

[15] "Let everyone be subject to the governing authorities, for there is no authority except that which God has established. The authorities that exist have been established by God. Consequently, whoever rebels against the authority is rebelling against what God has instituted, and those who do so will bring judgment on themselves." Romans 13:1-2.

12

If released from prison, Elaine intends to continue to make amends by becoming part of a church community and volunteering her time. Elaine is especially interested in volunteering to help the homeless, and to being a support to others who are reentering society after a period of incarceration.

V.      **Family Support**

Family ties are an important factor in a prisoner's rehabilitation and in a released prisoner's chances for success on supervised release. As Justice Marshall observed in his dissent in *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 465 (1989) (Marshall, Brennan, Stevens, JJ., dissenting), "[p]reservation of the family unit is important to the reintegration of the confined person and decreases the possibility of recidivism upon release." *Thompson*, 490 U.S. at 468 (quoting National Conference of Commissioners on Uniform State Laws, Model Sentencing and Corrections Act § 4-115, Comment (1979)). While Elaine has a small family, just one brother and his wife and two adult children, she considers herself fortunate that they fiercely support her and are willing to do anything to help ensure her success and safety should she be released.

Both Elaine's son David Hatch-Bernier and her brother George Bernier (and his wife Barbara Bernier) have offered to open their homes to Elaine upon her release. David lives in Somerville, Massachusetts, in close proximity to public transit, with a public library and gardens close by. All of this appeals greatly to Elaine. A benefit of living in Somerville is that Elaine's daughter Bethany also lives close by. Recent interviews with David and Bethany conducted by a federal defender investigator are attached as Exhibits E and F. *See Exhibits E and F.*  All four of

Elaine's family members – George Bernier, Barbara Bernier, David Hatch-Bernier, and Bethany Hatch - are expected to attend the resentencing.[16]

While Elaine kept in contact with Edward by email for many years while incarcerated, she has recently initiated divorce proceedings (he has so far refused to grant her a divorce). She has decided that she wants nothing to do with him from here on in. She has communicated this to him and has ceased contact with him. As she will tell the Court in her allocution, she is hoping to live a quiet, peaceful life with her children, attending church and engaging in activities she enjoys, such as cooking, gardening, and needlework.

## VI. Conclusion

Fifteen years ago, Edward and Elaine Brown defended themselves against what they both then believed was an unjust tax system. They presented their ideas to a jury, on their own and without counsel, and the jury rejected them, convicting them both. Edward absented himself from the trial halfway through, barricading himself in the couple's home in Plainfield; Elaine finished the trial, but later joined Edward in defiance of the Court's bail order. The couple's face-off with authorities unfolded over 8 months and attracted supporters from across the country. Edward and Elaine and some of their supporters were ultimately arrested and tried; several, like Elaine, were sentenced to lengthy prison terms. Elaine herself was sentenced to 420 months, to be served consecutive her already imposed 63-month sentence on the tax evasion charges.

Now almost 80 years old, and after serving more than 12 years of her aggregated sentence, Elaine is before the Court for resentencing. The 18 U.S.C. § 924(c) count has been vacated and along with it the 30-year mandatory minimum sentence imposed in 2009. Elaine is

---

[16] Letters that George Bernier, David Hatch-Bernier, and Bethany Hatch submitted to the Court five years ago, in 2014 (as attachments to a post-conviction motion filed by Elaine), are attached as Exhibit G. *See Document No. 285 and attachments.*

not the same person she was in 2009. Twelve years in federal prisons all across the country – FCI Danbury (CT), FCC Hazelton (WV), FCI Aliceville, and FMC Carswell – have chastened and humbled her. Elaine has dedicated herself to her prison community, as a library clerk, student, volunteer, and participant in a multi-faith community. She has accomplished what she was able to and in word and deed has apologized for her actions. She has demonstrated through her actions that she is deeply remorseful for her crimes and the hurt, pain, and trouble she caused others and her community in general. Elaine has also changed in that she has grown older; she suffers from COPD, osteoarthritis, and other age-related ailments. If she is released she intends to live with her children, and volunteer her time through her church. She deeply regrets the crimes she committed; she avers that at the time she thought it was her Christian duty to stand by her husband but understands now that she was wrong and that her loyalty to Edward was badly misplaced. A guideline sentence in this case would likely be a life sentence, and she respectfully requests that the Court resentence her below the advisory guidelines, to time served, so she can live out her remaining years with her children, in the community. A below-guideline sentence of time served is sufficient, but not greater than necessary, to effect the purposes of the sentencing statute, 18 U.S.C. § 3553(a)(2).

**VII.   Lack of Separate Memorandum**

No separate memorandum is filed as all points and authorities are contained herein.

**VIII.  Statement of Conference**

Defense counsel has conferred with government's counsel, Seth Aframe, AUSA. Attorney Aframe has indicated that he will file the government's response after reviewing the defendant's motion.

## IX. Request for Relief

Wherefore the defendant, Elaine Brown, through her counsel, respectfully requests that the Court grant the within motion and sentence her below the advisory sentencing guidelines to time served, with three years of supervised release to follow, and for such other relief as may be deemed just.

Respectfully submitted,

ELAINE BROWN,
By and through her counsel,

Date: January 16, 2020

*/s/ Jeffrey S. Levin*
Jeffrey Levin (NHBA # 12901)
Assistant Federal Public Defender
Federal Defender Office
22 Bridge Street, Box 12
Concord, NH 03301
(603) 226-7360
Jeff_Levin@fd.org

**Certificate of Service**

I hereby certify that on January 16, 2020 the above document was served via CM/ECF to counsel of record, AUSA Seth Aframe.

*/s/ Jeffrey S. Levin*
Jeffrey Levin